UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  23-CV-80637-AMC

RICHARD J. TOWNSEND,

                    Plaintiff,

vs.

CITY OF BOCA RATON, FLORIDA,
a Florida municipal corporation,
and ADAM KENISTON, individually,

                    Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT [ECF No. 6]

Defendants, City of Boca Raton, Florida (the "City"), and Adam Keniston (collectively, "Defendants") seek dismissal of Plaintiff Richard Townsend's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). ECF No. 6. I have reviewed the Motion, Mr. Townsend's Response (ECF No. 8), and Defendants' Reply (ECF No. 9). I also conducted oral argument on July 24, 2023. ECF No. 17. I am fully advised and this matter is now ripe for decision. For the reasons stated below, the Motion should be **GRANTED IN PART and DENIED IN PART**.

## PROCEDURAL BACKGROUND

Mr. Townsend filed his initial two-count complaint in the Fifteenth Judicial Circuit Court, in and for Palm Beach County, Florida, on October 21, 2021, alleging false arrest against the City and malicious prosecution against Officer Keniston. ECF

No. 1-4 at 4-10. On March 13, 2023, Mr. Townsend filed an Amended Complaint in state court alleging, under Florida law, false arrest against the City (Count I), and malicious prosecution (Count II), and trespass (Count III) against Officer Keniston; as well as, under 42 U.S.C. § 1983 ("Section 1983"), false arrest (Count IV) and malicious prosecution (Count VI) against Officer Keniston, and false arrest against the City for lack of supervision and training (Count V). ("Amended Complaint"). ECF Nos. 1-2 at 4-24; 1-3. Defendants filed a Notice of Removal on April 11, 2023. ECF No. 1. Thereafter, Defendants filed the instant Motion asking to dismiss the Amended Complaint. ECF No. 6.

## **LEGAL STANDARD**

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pled factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679. The scope of the court's review on a motion to dismiss is limited to the four corners of the complaint and the documents attached to the complaint or directly referred to in the complaint. *Jordan v. Miami-Dade Cnty.*, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006) (J. King).

## FACTS ALLEGED IN AMENDED COMPLAINT

According to the Amended Complaint, numerous vehicle and other thefts occurred near Mr. Townsend's residence prior to May 16, 2020. ¶ 12.[1] On May 16, 2020, the City's tactical team learned that a vehicle known to commit auto burglaries and auto thefts was in the area of Mr. Townsend's home; Officer Keniston was part of that team. ¶¶ 31, 32. That night, Mr. Townsend and his wife were awakened and alerted to movements in their front yard and driveway via their RING surveillance camera system. ¶ 14. An individual wearing all black was walking around the driveway and shining a flashlight into Mr. Townsend's pickup truck. ¶ 15. While Mr. Townsend's wife called 911 to report a suspicious incident, Mr. Townsend grabbed his firearm and exited his residence. ¶¶ 16-17. The individual wearing all black then

---

[1] Unless otherwise noted, all paragraph numbers correspond to the paragraphs in the Amended Complaint. ECF No. 1-2 at 4-24.

3

began to walk away from Mr. Townsend's residence toward a black unmarked Chevrolet Tahoe parked near the residence. ¶ 18. After Mr. Townsend shouted at the individual, the individual drove away from the residence in the unmarked vehicle while Mr. Townsend was standing on the side of his street. ¶ 19. The individual, who Mr. Townsend alleges was Officer Keniston, did not identify himself as a police officer during these events. ¶ 20.

Shortly thereafter, the unmarked vehicle returned to Mr. Townsend's residence with its blue lights activated. ¶ 21. Officer Keniston ordered Mr. Townsend to place his firearm on the street. *Id.* Mr. Townsend complied with the officer's orders. ¶ 22.

The Amended Complaint alleges that Mr. Townsend did not point his firearm at Officer Keniston at any time and that Officer Keniston did not claim a firearm was pointed at him the night of the incident. ¶¶ 23, 25, 46. Officer Keniston allegedly reported that "an intoxicated individual was carrying a firearm" and that Mr. Townsend "raised his arm at him while [Officer] Keniston was in the neighborhood." ¶¶ 37, 38. At a later date, Officer Keniston stated in a probable cause affidavit that he saw Mr. Townsend raise a dark object in his hands toward Officer Keniston's vehicle, which appeared to be a handgun. ¶ 47.

Officer Keniston ultimately arrested Mr. Townsend for felony aggravated assault with a deadly weapon. ¶ 40. Mr. Townsend alleges that the arrest was without probable cause and that Officer Keniston lied in his probable cause affidavit about seeing Mr. Townsend raise a dark object toward his vehicle. ¶¶ 45, 47. Mr. Townsend

4

suggests that Officer Keniston's statement related to seeing the dark object raised toward his vehicle is unbelievable because it was late at night and Officer Keniston's vehicle had darkly tinted windows. ¶ 49. Additionally, Mr. Townsend alleges that Officer Keniston knew that Mr. Townsend mistakenly believed that Officer Keniston was a thief trespassing on his private residence at the time of the arrest. ¶¶ 40, 48.

Mr. Townsend was held without bond for two days until he could appear before a judge. ¶ 54. On June 9, 2020, prior to arraignment, the State Attorney's Office entered a "no file" and dismissed the criminal charges. ¶ 59.

## **PARTIES' ARGUMENTS**

### 1. *Motion*

Defendants argue that the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted. ECF No. 6 at 2. Defendants argue that Mr. Townsend's false arrest and malicious prosecution claims should be dismissed because the relevant allegations in the Amended Complaint show that Officer Keniston had probable cause to arrest Mr. Townsend. *Id.* at 3-7. Specifically, Defendants allege that Officer Keniston "could have reasonably believed" that Mr. Townsend pointed a gun at his vehicle while he drove away from Mr. Townsend's residence. *Id.* at 6. Separately, Defendants argue that the Section 1983 malicious prosecution claim against Officer Keniston should be dismissed because Mr. Townsend's arrest cannot serve as the predicate deprivation of liberty required for a federal malicious prosecution claim. *Id.* at 7-8.

5

Next, Defendants argue that the trespass claim against Officer Keniston, in his individual capacity, must be dismissed pursuant to Florida's sovereign immunity statute because the Amended Complaint does not allege that Officer Keniston acted with bad faith or malicious purpose. *Id.* at 8-10. In the alternative, Defendants argue that the trespass claim should be dismissed because Officer Keniston's entry onto Mr. Townsend's property was justified because he was either making a general inquiry or was responding to an emergency situation in the lawful performance of his duty. *Id.* at 10-12. Further, Defendants argue that the Amended Complaint fails to allege appropriate damages for Mr. Townsend's trespass claim. *Id.* at 12.

Defendants argue Mr. Townsend's Section 1983 claim against the City fails because the Amended Complaint fails to allege a City custom or policy that caused a violation of Mr. Townsend's constitutional rights. *Id.* at 12-14. Specifically, Defendants argue that even if the City had a policy of encouraging its tactical team officers to enter private property, Mr. Townsend's Section 1983 claim fails because the conduct related to the alleged policy or custom is not unconstitutional. *Id.* at 14. Finally, the City argues that the Amended Complaint fails to point to any occurrence, other than Mr. Townsend's arrest, in which the City's conduct resulted in a violation of rights. *Id.* at 15.

### 2. *Response*

Mr. Townsend responds that the Motion is untimely because the state court issued an order requiring Defendants to file their responsive pleading by April 12, 2023, and the Motion was not filed until April 18, 2023 (after Defendants filed the

notice of removal). ECF No. 8 at 1 n.1. In addition, Mr. Townsend argues that he has pled sufficient facts to establish a false arrest claim under Florida law and Section 1983, including allegations related to Officer Keniston's lack of probable cause for the arrest; he cites to specific allegations in the Amended Complaint that support his claims. *Id.* at 3-5. Similarly, Mr. Townsend cites to specific facts in the Amended Complaint that he argues are sufficient to support his malicious prosecution and trespass claims. *Id.* at 5-8.

Mr. Townsend further contends he has alleged sufficient facts to assert a municipal liability claim against the City. *Id.* at 8-14. He argues that he was not required to allege previous incidents to support his Section 1983 action against the City because liability attaches for a single incident "if the need to train and supervise in a particular area 'is so obvious.'" *Id.* at 8-9. Finally, he argues that the Amended Complaint sufficiently alleges both that the City has a policy that is "so obviously wrong that it is unconstitutional" and that the City fails to adequately supervise and train law enforcement officer conduct. *Id.* at 10-14.

3. *Reply*

Defendants reply that the Motion is timely based on Federal Rule of Civil Procedure 81(c)(2)(C) because the Motion was filed within seven days of the notice of removal. ECF No. 9 at 1 n.2. Defendants contend that the probable cause inquiry for the false arrest and malicious prosecution claims is evaluated from the perspective of a reasonable officer in circumstances similar to Officer Keniston's circumstances, rather than Mr. Townsend's perspective. *Id.* at 1-5. Defendants next argue that

Mr. Townsend's claim that he believed that Officer Keniston was a thief is irrelevant to the probable cause analysis because pointing a gun at any person, be it an officer or a thief, constitutes aggravated assault. *Id.* at 2-3. Defendants next claim that Mr. Townsend failed to substantively respond to the City's trespass arguments. *Id.* at 5-7. In addition, Defendants argue that Mr. Townsend's response concedes that the City does not have a history of widespread prior abuse that would demonstrate a deliberate choice by the City to inadequately train or supervise its police officers. *Id.* at 7-8. Finally, Defendants argue that the Eleventh Circuit has not extended the "single instance of unconstitutional conduct" theory discussed in Mr. Townsend's response beyond the context of a failure to train officers to use deadly force. *Id.* at 8.

## DISCUSSION

### 1. *Timeliness*

Defendants' Motion was timely filed. Pursuant to Federal Rule of Civil Procedure 81(c)(2)(C), "A defendant who did not answer before removal must answer or present other defenses or objections under these rules within… 7 days after the notice of removal is filed." The Motion was filed on April 18, 2023; seven days after the notice of removal was filed. Therefore, the Motion is timely.

### 2. *Counts I and IV (False Arrest)*

Defendants' request to dismiss Mr. Townsend's false arrest claims (Counts I and IV) should be denied because the Amended Complaint alleges a plausible claim of false arrest against the City, pursuant to Florida law, and Officer Keniston,

pursuant to Section 1983.[2] The elements of a false arrest claim under Florida law are: "(1) the unlawful detention and deprivation of liberty of a person (2) against that person's will (3) without legal authority or 'color of authority' and (4) which is unreasonable and unwarranted under the circumstances." *Florez v. Broward Sheriff's Office*, 270 So. 3d 417, 421 (Fla. 4th DCA 2019) (quoting *Montejo v. Martin Mem'l Med. Ctr., Inc.,* 935 So. 2d 1266, 1268 (Fla. 4th DCA 2006)). "A defendant may raise probable cause as an affirmative defense to a claim for false arrest." *Amato v. Cardelle*, 56 F. Supp. 3d 1332, 1334 (S.D. Fla. Oct. 30, 2014) (J. Gayles) (citation omitted). "Similarly, to state a false arrest claim under § 1983, a plaintiff must allege a warrantless arrest without probable cause." *Id.* (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990)).

Probable cause exists "if at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Amato*, 56 F. Supp. 3d at 1334 (quoting *Holmes v. Kucynda,* 321 F.3d 1069, 1079 (11th Cir. 2003)); *Kingsland*, 382 F.3d at 1226. "The Court evaluates probable cause from the viewpoint of a prudent, cautious police officer on the scene at the time of the arrest." *Amato*, 56 F.

---

[2] Notably, Defendants do not argue that sovereign immunity bars Mr. Townsend's false arrest suit against the City. *See Jibory v. City of Jacksonville*, 920 So. 2d 666, 667 (Fla. 1st DCA 2005) (collecting cases holding that sovereign immunity does not bar a false arrest claim against the government); *see also Florez*, 270 So. 3d at 422-423.

Supp. 3d at 1334 (citing *Miami–Dade County v. Asad,* 78 So. 3d 660, 668 (Fla. 3d DCA 2012)).[3] "To show probable cause, the arresting officer must have had reasonable grounds to believe that the arrestee committed a crime." *Amato*, 56 F. Supp. 3d at 1334 (citing *Holmes*, 321 F.3d at 1079).

Florida law defines aggravated assault as an assault "with a deadly weapon without intent to kill or… with an intent to commit a felony." Fla. Stat. § 784.021. An "assault" is "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011.

Taking Mr. Townsend's well-pled factual allegations as true and drawing all reasonable inferences in his favor, he plausibly alleges that Officer Keniston lacked probable cause to arrest him for aggravated assault. The Amended Complaint alleges that Mr. Townsend did not point his gun at Officer Keniston and that Officer Keniston's probable cause affidavit, seemingly created after Mr. Townsend's arrest, fabricated seeing Mr. Townsend raise a dark object that appeared to be a handgun in the direction of Officer Keniston's vehicle. To support this contention, the Amended

---

[3] The Motion erroneously suggests that Officer Keniston needed only to have arguable probable cause to defeat Mr. Townsend's false arrest claims. *See e.g.* ECF No. 6 at 7. Arguable probable cause is the standard for qualified immunity, which is not now before the Court. *See e.g. Holmes*, 321 F.3d at 1079 (discussing the probable cause necessary for an arrest and the arguable probable cause necessary for qualified immunity).

Complaint alleges that Officer Keniston did not report seeing Mr. Townsend point a gun at him on the night of the incident, but rather reported seeing an "intoxicated individual" walking on the street with a firearm and seeing that individual raise his arm as the officer *drove away* from the individual. The Amended Complaint also challenged the credibility of the observations stated in Officer Keniston's probable cause affidavit because Officer Keniston's vehicle had darkly tinted windows and the incident occurred late at night when it was dark outside. These allegations plausibly support Mr. Townsend's claim that Officer Keniston lacked probable cause to believe Mr. Townsend committed a crime that night.

The gravamen of Defendants probable cause argument is that Officer Keniston "could have reasonably believed" that Mr. Townsend was a burglar and/or pointed a gun at his vehicle based on (1) the recent thefts around Mr. Townsend's residence, (2) the presence of a vehicle known to commit auto burglaries and thefts in the area around Mr. Townsend's residence, and (3) Officer Keniston's report that an individual was walking down the street with a firearm. Although Defendants correctly argue that the existence of probable cause at the time of an arrest "constitutes an absolute bar to a section 1983 action for false arrest;" I must take all of Mr. Townsend's allegations as true at this stage of the proceedings and draw all reasonable inferences in his favor, rather than in favor of Officer Keniston. *See Kingsland v. City of Miami*,

382 F.3d 1220, 1226 (11th Cir. 2004) (citation omitted); *see also Amato*, 56 F. Supp. 3d at 1334.[4]

Defendants do not otherwise challenge the sufficiency of Mr. Townsend's false arrest allegations and Mr. Townsend adequately pleads the remaining elements of a false arrest claim under Florida law and Section 1983. Therefore, Counts I and IV of the Amended Complaint should not be dismissed. *See Amato*, 56 F. Supp. 3d at 1334 (denying motion to dismiss false arrest claims made under Florida law and Section 1983 where plaintiff adequately pled that an officer did not have probable cause to arrest him).

3.  *Counts II and VI (Malicious Prosecution)*

a.  Malicious Prosecution under Florida Law

Defendants' request to dismiss Mr. Townsend's state law malicious prosecution claim against Officer Keniston (Count II) should be denied because the Amended Complaint alleges a plausible claim of malicious prosecution under Florida law. The elements of a malicious prosecution claim under Florida law are:

> (1) a criminal or civil judicial proceeding was commenced against the plaintiff; (2) the proceeding was instigated by the defendant in the malicious prosecution action; (3) the proceeding ended in the plaintiff's favor; (4) the proceeding was instigated with malice; (5) the defendant lacked probable cause; and (6) the plaintiff was damaged.

---

[4] Like the Eleventh Circuit in *Kingsland*, I do not suggest that Officer Keniston engaged in fabrication, but I must accept Mr. Townsend's allegations as true at this stage of the proceedings. *Kingsland*, 382 F.3d at 1228 n.9.

*Asad*, 78 So. 3d at 664 (emphasis removed) (first citing *Kalt v. Dollar Rent–A–Car*, 422 So. 2d 1031, 1032 (Fla. 3d DCA 1982); then citing *Adams v. Whitfield*, 290 So. 2d 49, 51 (Fla.1974)).

Notably, "an arrest without further prosecution can constitute a basis for malicious prosecution" under Florida law. *Levine v. Hunt*, 932 So. 2d 1292, 1293 (Fla. 2nd DCA 2006); *Jackson v. Biscayne Med. Ctr., Inc.*, 347 So. 2d 721, 723 (Fla. 3d DCA 1977) ("The law is. . . clear[ ] that the essential prerequisite to bringing an action of malicious prosecution a bona fide termination of prosecution in favor of a plaintiff is satisfied if there is either an adjudication on the merits in a judicial proceeding or, if there is a nolle prosequi or declination to prosecute entered in good faith by the prosecutor.") (citation omitted); *see also Claridy v. City of Lake City*, No. 13-CV-558, 2014 WL 11430860, at *8-11 (M.D. Fla. Nov. 18, 2014). Indeed, the Second District Court of Appeal specifically held in *Levine* that a State Attorney's subsequent declination to prosecute does not affect the presence of the first element of a malicious prosecution claim. 932 So. 2d at 1293.

Defendants' argument that Mr. Townsend's state law malicious prosecution claim should be dismissed because probable cause is apparent from the face of the Amended Complaint fails for the reasons stated in Section 2, above. Defendants do not otherwise challenge the sufficiency of Mr. Townsend's state law malicious prosecution allegations and Mr. Townsend adequately pleads the elements of a malicious prosecution claim under Florida law.

b.  Section 1983 Malicious Prosecution

Defendants' request to dismiss Mr. Townsend's Section 1983 malicious prosecution claim against Officer Keniston (Count VI) should be granted because the Amended Complaint fails to allege Mr. Townsend suffered a predicate deprivation of liberty pursuant to legal process. To establish a Section 1983 malicious prosecution claim a plaintiff must prove: "(1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020). Because the parties do not dispute that the criminal proceedings against Mr. Townsend terminated in his favor, I need only analyze whether, assuming the allegations in the Amended Complaint are true, "any Fourth Amendment violation was a 'seizure[ ] pursuant to legal process.'" *McAffee v. City of Clearwater*, No. 22-12320, 2023 WL 2823392, at *2 (11th Cir. Apr. 7, 2023) (citing *Luke v. Gulley*, 50 F.4th 90, 95 (11th Cir. 2022)).

The Eleventh Circuit has identified "the types of deprivations of liberty that qualify as seizures pursuant to legal process and give rise to § 1983 malicious prosecution claims." *McAffee*, 2023 WL 2823392, at *2 (citing *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020)). In contrast to malicious prosecution claims made under Florida law, "a plaintiff who is subjected to a warrantless arrest but is not detained after the commencement of judicial proceedings generally does not suffer a seizure pursuant to legal process" under federal law. *McAffee*, 2023 WL 2823392, at *2 (citing *Kingsland*, 382 F.3d at 1235). This is because "the judicial proceeding does

14

not begin until the party is arraigned or indicted." *Kingsland*, 382 F.3d at 1235 (citing *Mejia v. City of New York,* 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000) ("[T]he existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the preceding warrantless arrest.")). "Thus, the plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was 'not one that arose from malicious prosecution as opposed to false arrest.'" *Kingsland*, 382 F.3d at 1235 (citing *Mejia*, 119 F. Supp. 2d at 254 n.26).

The Eleventh Circuit's decision in *Kingsland* is instructive. In *Kingsland*, the plaintiff filed Section 1983 false arrest and malicious prosecution claims against the City of Miami and three officers. 382 F.3d at 1225. The plaintiff alleged she was arrested and charged with driving under the influence of alcohol after being involved in an automobile accident with an off-duty officer, despite her breathalyzer and cannabis tests coming back negative. *Id.* at 1223-25. She spent the night in jail and was released on bond the day after the accident. *Id.* at 1225. She was later arraigned on charges of careless driving, reckless driving, and DUI. *Id.* She made two trips from New Jersey to Florida to appear in court for the charges. *Id.* Her charges were dropped after she filed a motion to dismiss in light of the drug test results. *Id.*

The Eleventh Circuit held that the plaintiff's one day detention and conditions of pretrial release did not constitute a significant deprivation of liberty and did not constitute a seizure violative of the Fourth Amendment. *Kingsland*, 382 F.3d at 1236.

Based on this holding, the Eleventh Circuit affirmed the district court's grant of summary judgment on the plaintiff's malicious prosecution claim. *Id*.

In this case, Mr. Townsend was allegedly handcuffed and searched against his will, arrested without probable cause, and held in a transport vehicle for more than two hours before being held without bond in the Palm Beach County Jail for two days. ¶¶ 45, 51, 53-54. After posting bond, Mr. Townsend alleges he needed to be ready to appear in court at any time. ¶ 58. However, the Amended Complaint does not allege that Mr. Townsend was arraigned or formally charged before the State Attorney's Office entered a "no file" and dismissed the criminal charges. ¶ 59.

Even viewing the allegations in the light most favorable to Mr. Townsend, the Amended Complaint does not plead facts that rise to the level of a significant deprivation of liberty pursuant to legal process. *See Kingsland*, 382 F.3d at 1236; *McAffee*, 2023 WL 2823392, at *3 (affirming dismissal of federal malicious prosecution claim where plaintiff did not allege that he was "subjected to a seizure following an arraignment, indictment, or probable-cause hearing in the state criminal case"). Therefore, Mr. Townsend fails to plausibly allege a Section 1983 malicious prosecution claim against Officer Keniston. Count VI should be dismissed with prejudice because further amendment cannot cure the lack of sufficient judicial process.

16

c. <u>Count III (Trespass)</u>

During the oral argument on July 24, 2023, Mr. Townsend agreed to dismiss his trespass claim against Officer Keniston. Therefore, Count III of the Amended Complaint should be dismissed without prejudice.

4. *Count V (Section 1983 claim for False Arrest based on Lack of Supervision and Training)*

Defendants' request to dismiss Mr. Townsend's Section 1983 false arrest claim against the City for lack of supervision and training should be granted because the Amended Complaint fails to sufficiently allege that the City displayed a deliberate indifference to a history of constitutional abuses by its tactical team. A municipality or other local government may be liable under Section 1983 if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978). A plaintiff may only hold a local-government entity liable under Section 1983 for its own illegal acts; injuries caused solely by its employees are not attributable to the government entity. *Id.* at 665–83. Hence, a plaintiff must prove that "action pursuant to official municipal policy" caused his injury. *Id.* at 691. That is the essence of a *Monell* claim.

A plaintiff has two methods by which to establish a municipal policy or custom under *Monell*: identify either (1) an officially promulgated policy or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker for the municipality. *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329–30 (11th Cir. 2003).

17

Rarely can a plaintiff point to a municipality's officially-adopted policy of permitting a particular constitutional violation. Most plaintiffs must show that the municipality has an unofficial custom or practice of permitting the violation and that the custom or practice is the "moving force" behind the constitutional violation. *Doe v. Sch. Bd. of Miami-Dade Cnty.*, 403 F. Supp. 3d 1241, 1264 (S.D. Fla. 2019) (J. Ungaro) (citing *Grech*, 335 F.3d at 1330).

A "custom" is "a practice that is so settled and permanent that it takes on the force of the law." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999)). A "custom" must be "so pervasive as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994). Actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. *Id.* at 1345 (quoting *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986)).

"Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) (J. Lenard) (quoting *Depew*, 787 F.2d at 1499) (finding that four isolated shootings did not "establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law" (quoting *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)) (internal quotations omitted)); *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1328 (S.D. Fla. 2018)

18

(J. O'Sullivan) ("[T]he plaintiff must allege a 'pattern' of excessive force including specific facts of numerous incidents[.]"). To establish a pattern, the plaintiff must show other incidents involving facts "substantially similar to the case at hand." *See Bowe v. City of Hallandale Beach*, No. 16-CIV-60993, 2017 WL 5643304, at *5 (S.D. Fla. Aug. 7, 2017) (J. Dimitrouleas); *see also Gurrera v. Palm Beach Cnty. Sheriff's Office*, 657 F. App'x 886, 893 (11th Cir. 2016) ("A pattern of similar constitutional violations is ordinarily necessary.") (quoting *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011)).

"A municipality's failure to train or supervise its police officers may rise to the level of an actionable 'policy' or 'custom' if there existed a prior history or widespread practice of a constitutional abuse that would have put the municipality on notice of a need for improved training or supervision in that area, and the municipality deliberately chose to ignore the problem, i.e. the government displayed a 'deliberate indifference' to a history of constitutional abuses." *Bakst v. Tony*, No. 13-CV-61411, 2019 WL 1497910, at *8 (S.D. Fla. Mar. 18, 2019) (J. Marra) (citing *Bd. of Comm'rs v. Brown*, 520 U.S. 397 (1997)); *see also Wright v Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990); *Warren v. District of Columbia*, 353 F.3d 36 (D.C. Cir. 2004)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410.

> In order to establish deliberate indifference, the "plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Lewis*, 561 F.3d at 1293 (internal quotation omitted). A municipality may be put on notice if either (1) the

> municipality is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, or (2) the likelihood for a constitutional violation is so high that the need for training would be obvious. *Id.*

*Hoti v. Barkley Master Assoc., Inc.*, No. 18-cv-80484, 2019 WL 11660558, at *4 (S.D. Fla. Mar. 26, 2019) (J. Middlebrooks). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted). The Supreme Court has identified a single example of a situation where the likelihood for a constitutional violation renders the need to train obvious: "a municipality's failure to train officers about the constitutional limits on the use of deadly force though arming the officers with guns and expecting to use them in the course of their duties." *Sosa v. Martin Cnty., Florida*, No. 20-12781, 2023 WL 1776253, at *7 (11th Cir. Feb. 6, 2023) (first citing *Connick*, 563 U.S. at 63; then citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

The first determination is whether the Amended Complaint sufficiently alleges that the City's actions deprived Mr. Townsend of a federal right. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Tomberlin v. Clark*, 1 F. Supp. 3d 1213, 1230 (N.D. Ala. 2014) ("The first element requires the Court to determine whether the plaintiff has pleaded both the existence of a constitutionally-protected interest and a deprivation of such an interest.") (citing *Arrington v. Helms*, 438 F.3d 1336, 1348 (11th Cir. 2006)). Although the Amended Complaint generally refers to "constitutional violations"

without identifying the specific federal right that was violated,[5] Mr. Townsend's response clarifies that the applicable federal right is a Fourth Amendment right to be free from unreasonable seizures due to warrantless arrests without probable cause. ECF No. 8 at 8.

It is clear that a "warrantless arrest without probable cause violates the Fourth Amendment." *Sherman v. Blair*, No. 15-CV-36-OC-34PRL, 2015 WL 9685940, at *4 (M.D. Fla. Dec. 18, 2015) (citation omitted), *report and recommendation adopted*, 2016 WL 99570 (M.D. Fla. Jan. 8, 2016). As stated in Section 2, Mr. Townsend sufficiently pleads that he was deprived of his Fourth Amendment right to be free from unreasonable seizure when he was arrested without probable cause. Therefore, I must now turn to the main *Monell* question, whether the Amended Complaint plausibly alleges that the City caused the deprivation of Mr. Townsend's Fourth Amendment right due to an unofficial policy, custom, or failure to train.

The Amended Complaint contains no allegations of an official policy regarding the training or supervision of tactical team officers that could serve as grounds for imposing liability against the City. Indeed, the Amended Complaint alleges that an official policy to train and supervise members of the tactical team does not exist and

---

[5] Notably, the Amended Complaint appears to allege that the entry of the City's tactical team onto private property constitutes a violation of rights sufficient to support a *Monell* claim. However, Mr. Townsend fails to explain how entry onto private property, by law enforcement officers, constitutes a violation of a *federal* right. Therefore, any *Monell* claim based on this theory fails. To the extent Mr. Townsend seeks to allege that the City committed other "constitutional violations," I find that Mr. Townsend has failed to sufficiently identify the federal right that was violated.

claims the City has other "de facto" policies, practices, or customs that support Mr. Townsend's *Monell* claim. ¶¶ 108-109, 113. Mr. Townsend argues that the following allegations show that the City's tactical team had a practice of violating constitutional rights through the execution of the City's "de facto" policies, customs, or practices:

¶ 41. The "tactical team" had entered the yards of private residences in the past, purportedly to look into resident's vehicles for signs of vandalism. The "tactical team" had done so in the same tactical uniforms and in unmarked vehicles.

¶ 42. The risk of mistaking a law enforcement officer for a thief is heightened under these circumstances because inadequate training or supervision amounts to a deliberate indifference to the rights of persons with whom the police come into contact.

¶ 43. After this incident, the Boca Raton Police Department took measures to ensure that such constitutional violations will not re-occur, such as by requiring "tactical team" members to wear more visible logos and patches that would more easily identify them as law enforcement officers and not be mistaken as thieves by homeowners such as Plaintiff.

¶ 44. This constitutional violation was a highly predictable consequence of the lack of supervision or training for the "tactical team" and contrary to the practice of most police departments and was particularly dangerous because it presented an unusually high risk that constitutional rights would be violated.

¶ 96. On or about May 16, 2020, Defendant Keniston, acting under color of state law and acting as a law enforcement officer employed by, and supervised by, Defendant Boca Raton, deprived Plaintiff of his rights guaranteed by the United States Constitution, (as recognized in 42 U.S.C. § 1983), in that Defendant Keniston detained and arrested Plaintiff for the offense of aggravated assault.

¶ 97. This detention was caused by the lack of supervision of Defendant Keniston, as more fully alleged herein, and the lack of specific training while entering homeowner properties without their permission.

¶ 98. At that time, and prior to and subsequent to the arrest, Defendant City encouraged its "tactical team," of which Defendant Keniston was a member, to trespass onto the private property of homeowners such as Plaintiff, in the middle of the night, to check for evidence of crimes that may have been committed.

¶ 99. Defendant City encouraged and supplied undercover unmarked vehicles that would disguise the presence of law enforcement.

¶ 100. Defendant City encouraged and supplied uniforms to "tactical team" members designed to disguise the law enforcement officers from appearing to be law enforcement officers.

¶ 101. Defendant City encouraged the "tactical team" members to look into private vehicles on private property, using flashlights, and to try to open vehicle doors, without regard to the privacy of homeowners.

¶ 102. Defendant City failed to provide substantial supervision of the "tactical team" members while they were engaged in the activities, including training to avoid confrontations with homeowners while disguised and entering homeowners' properties in the early hours, which lead to Plaintiff's false arrest.

¶ 103. Specifically, Defendant City did not provide any specialized training for this "tactical team" on: 1) how to approach residences in the late hours, 2) how to dress to avoid being mistaken for a prowler, thief, or burglar, and 3) how to account for residents who might take action under the assumption that they are not law enforcement officers.

¶ 106. Defendant City encouraged its officers and agents, including Officer Keniston, to enter private property in such a manner, without proper safeguards for being its law enforcement officers being mistaken for thieves.

¶ 107. As further evidence of a custom, policy, and/or practice of entering private residences in such a fashion as more fully alleged herein, there was no basis to warrant a reasonable police officer to find probable cause that Plaintiff had committed crime when Plaintiff made it clear repeatedly that he thought Defendant Keniston was a thief who did not announce himself as a law enforcement officer.

¶ 108. Defendant City has no policy or procedure for proper supervision of Defendant Keniston, other than the two sergeants assigned to the

23

"tactical team" who would only review investigations, reports, and probable cause affidavits.

¶ 109. Defendant City has no specialized or formalized training for the "tactical team" and has failed to train Defendant Keniston and other "tactical team" members on safety precautions when confronting homeowners while on their property.

¶ 110. Defendant City condoned and supported the practices of Defendant Keniston, by ratifying and assisting him in the arrest and prolonged detention of Plaintiff, holding Plaintiff against his will, handcuffed, and without adequate clothing, in a transport vehicle for more than 2 hours, and assisting Defendant Keniston in commencing an arrest through the use of agents of Defendant City.

¶ 111. Although it was improper for Defendant Keniston to make an arrest, Defendant City did not discipline him or subject him to re-training, and instead found that Defendant Keniston violated no policies.

¶ 112. To further cover up the deficiencies in the "tactical team" operations, Defendant City then altered the coloring of the uniforms worn by the "tactical team" after the incident, and only because Plaintiff complained about the misidentification to Defendant City.

¶ 113. At all material times, Defendant Keniston was acting pursuant to Defendant City's policies, customs, and practices with respect to making arrests and commencing prosecutions, or lack thereof. The *de facto* policies, customs, and practices complained of include, but are not limited to: 1) retaliating against citizens by arresting them when they complain that police officers trespass on their property; 2) retaliating against citizens who have the constitutional right to bear firearms.

¶ 114. The *de facto* policies, customs, and practices, complained of, and lack thereof, were the moving force behind the deprivation of Plaintiff's constitutional rights.

ECF No. 8 at 11-14. In addition, at oral argument, Mr. Townsend's counsel articulated an additional policy or custom related to the tactical team's operations that is not clearly stated in the Amended Complaint. Because the policy or custom is

not stated in the Amended Complaint, it is not relevant to the Court's evaluation of the Motion.

I find that Mr. Townsend's *Monell* claim based on the City's failure to train or supervise the tactical team is insufficiently pled. The Amended Complaint contains no allegations regarding a prior history or widespread practice of constitutional abuse by the tactical team that would have put the City on notice of a need to train or supervise. *See Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights"). The Amended Complaint fails to point to a single incident, other than Mr. Townsend's arrest, where the tactical team allegedly conducted a warrantless arrest without probable cause or caused some other constitutional violation due to the de facto policies, customs, or practices identified in the Amended Complaint.[6]

In addition, the Amended Complaint fails to plausibly allege that the likelihood for a constitutional violation, due to the City's failure to train or supervise the tactical team, was so high that the need for training would be obvious. Even if the tactical team operates in the manner alleged in the Amended Complaint, the likelihood for a

---

[6] To the extent the Amended Complaint independently alleges that the City had a policy or custom of encouraging the tactical team officers to operate in an unconstitutional manner, it similarly fails to allege a pattern of Fourth Amendment violations sufficient to serve as grounds for imposing liability against the City. Other than Mr. Townsend's arrest, the Amended Complaint does not point to any incident that involved a Fourth Amendment violation by the City's tactical team, much less multiple incidents involving facts substantially similar to the case at hand.

25

constitutional violation due to these operations does not rise to the same level of obviousness as the Supreme Court's example of the need to train officers with guns.

Accordingly, the Amended Complaint fails to allege that the City was on notice of a need for improved training or supervision of the tactical team and deliberately chose to ignore a prior history or widespread practice of constitutional abuse. Therefore, Mr. Townsend's *Monell* claim based on the City's failure to supervise or train is insufficiently pled and should be dismissed. *See Sosa*, 2023 WL 1776253, at *7 (dismissing failure to supervise or train *Monell* claim where plaintiff did not sufficiently allege a pattern of similar constitutional violations that would have put the municipality on notice that its deputies were regularly violating people's rights through the alleged practice).

Because Mr. Townsend failed to plead deliberate indifference, I need not reach causation. *See Connick*, 563 U.S. at 59 n.5. However, for the sake of completeness, I independently find that Mr. Townsend has failed to plead that any alleged training or supervisory deficiency was the "moving force" that "actually caused" Mr. Townsend's warrantless arrest without probable cause. *See id*. The Amended Complaint's conclusory statement that the "de facto policies, customs, and practices complained of, and lack thereof, were the moving force behind the deprivation of Plaintiff's constitutional rights" is insufficient to plead causation. The Amended Complaint does not allege any facts that suggest that the deficiency in the tactical team's training or supervision actually caused Officer Keniston's indifference to Mr. Townsend's Fourth Amendment rights. *See City of Canton*, 489 U.S. at 391.

Therefore, Mr. Townsend's *Monell* claim should also be dismissed for failure to plausibly allege causation. The dismissal of Count V should be without prejudice because I cannot say on the present record that further amendment would be futile.

## **REPORT AND RECOMMENDATION**

Accordingly, this Court **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Defendants' Motion to Dismiss Amended Complaint (ECF No. 6). The Motion to Dismiss Counts I, II, and IV, should be **DENIED**. The Motion to Dismiss Counts III, V, and VI, should be **GRANTED** for the reasons stated above. Counts III and V should be dismissed without prejudice. Count VI should be dismissed with prejudice.

## <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 14th day of August 2023.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE